1  David G. Hoiles, Jr. (SBN 185298)
   hoilesd@jacksonlewis.com
2  Lindsay L. Ryan (SBN 258130)
   lindsay.ryan@jacksonlewis.com
3  JACKSON LEWIS LLP
   725 South Figueroa Street, Suite 2500
4  Los Angeles, California  90017-5408
   Telephone:  (213) 689-0404
5  Facsimile:  (213) 689-0430

6  Attorneys for Defendant
   HALLIBURTON ENERGY SERVICES, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  MARCOS REYES; individually, and on behalf of other members of the general 12  public similarly situated; | **Case No.** |
| | **PUTATIVE CLASS ACTION** |
| 13                              Plaintiffs, | **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT** |
| 14        v. | **COURT FOR THE EASTERN DISTRICT OF CALIFORNIA** |
| 15  HALLIBURTON ENERGY SERVICES, INC., an unknown business entity; and 16  DOES 1 through 1-100, inclusive; | **PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441(a) AND (b) (DIVERSITY)** |
| 17                              Defendants. | (Filed concurrently with Notice of Interested Parties, Declarations of David G. Hoiles, Jr., William L. Bedman and 18  Patricia Trampe, and Civil Case Cover Sheet) |
| 19 | |

20

21        **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

22        PLEASE TAKE NOTICE that Defendant Halliburton Energy Services, Inc.

23  ("Defendant") hereby invokes this Court's jurisdiction pursuant to 28 U.S.C. sections

24  1332 (as amended by the Class Action Fairness Act 2005, Pub. L. 109-2, section 4(a) (the

25  "CAFA")), 1441(a) and (b) and 1446, and removes the above-entitled action to this Court

26  from the Superior Court of the State of California in and for the County of Kern.

27        1.    On June 19, 2013, Plaintiff Marcos Reyes ("Plaintiff") filed a civil

28  complaint against Defendant in the Superior Court of the State of California in and for

---

the County of Kern captioned *Marcos Reyes v. Halliburton Energy Services, Inc.*, Case No. S-1500-CV-279662-SPC, on behalf of himself and others similarly situated in which he sets forth the following seven (7) causes of action: (1) violations of Labor Code sections 510, 1194 and 1198; (2) violations of Labor Code sections 226.7 and 512(a); (3) violations of Labor Code section 226.7; (4) violations of Labor Code section 201, 202 and 203; (5) violations of Labor Code section 226(a); (6) violations of Labor Code section 2802; and (7) violations of Business & Professions Code sections 17200 *et seq.* ("Complaint"). A copy of Plaintiff's Complaint is attached as **Exhibit "A."** (Declaration of David G. Hoiles, Jr. ("Hoiles Decl."), ¶ 3

2.    Defendant first received Plaintiff's Summons and Complaint and related court documents on July 5, 2013. A copy of the Summons, Complaint and other related court documents received by Defendant collectively are attached as **Exhibit "B."** (Hoiles Decl., ¶ 4.)

3.    On August 29, 2013, Defendant filed and served its Answer to the Complaint in the Superior Court for the County of Kern. A true and complete copy of the Answer Filed on Behalf of Defendant to Plaintiff's Unverified Class Action Complaint for Damages is attached as **Exhibit "C."** (Hoiles Decl., ¶ 5.) Exhibits A-C constitute all the pleadings that have been filed in this action as of the date of the filing of this Notice of Removal.

## TIMELINESS OF REMOVAL

4.    This Notice of Removal has been filed within thirty (30) days after Defendant was deemed served a copy of Plaintiff's Summons and Complaint upon which this action is based. This Notice of Removal therefore is filed within the time period provided by 28 U.S.C. section 1446(b).

5.    In accordance with 28 U.S.C. section 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Kern County Superior

1  Court. Therefore, all procedural requirements under 28 U.S.C. section 1446 will have

2  been satisfied.

3  **JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT**

4        6.    Section 4 of the CAFA has been amended to read, in relevant part:

5            The district courts shall have original jurisdiction of any civil

6            action in which the matter in controversy exceeds the sum or

7            value of $5,000,000, exclusive of interest and costs, and is a

8            class action in which – (A) any member of a class of plaintiffs

9            is a citizen of a State different from any defendant.

10        7.    In addition, the CAFA provides for jurisdiction in the district courts only

11  where the proposed class involves 100 or more members, or where the primary

12  defendants are not States, State officials, or other governmental entities. 28 U.S.C.

13  section 1332(d)(5).

14        8.    As set forth below, this is a civil action over which this Court has original

15  jurisdiction under 28 U.S.C. section 1332(d), in that it is a civil action filed as a class

16  action involving more than 100 members, and based on the allegations set forth in the

17  Complaint by Plaintiff, the amount in controversy exceeds the sum of $5,000,000 (*see*

18  *infra*), exclusive of interest and costs, and Plaintiff is a citizen of a state different from

19  Defendant. Furthermore, Defendant is not a State, State official, or other governmental

20  entity.

21  **DIVERSITY JURISDICTION**

22  **REMOVAL BASED ON DIVERSITY AND THE CAFA (28 U.S.C. sections 1332(a)**

23  **and (d))**

24        9.    The CAFA's diversity requirement is satisfied when any member of a class

25  of plaintiffs is a citizen of a state different from **any** defendant, when at least one member

26  of a class of plaintiffs is a citizen of a foreign state and one defendant is a U.S. citizen, or

27  when at least one member of a class of plaintiffs is a U.S. citizen and one defendant is a

28  citizen of a foreign state. 28 U.S. C. section 1332(d)(2).

---

1    10.   Citizenship of the parties in this Action is determined by their citizenship

2 status at the Action's commencement. *See Mann v. City of Tucson* (9th Cir. 1986) 782

3 F.2d 790.

4    11.   Plaintiff, at the time of filing of the Complaint, alleges he was a resident of

5 the State of California. (*See* **Exhibit "A,"** Complaint at ¶ 5.) Further, Defendant is

6 informed and believes that Plaintiff is a resident and a citizen of the State of California.

7 (Declaration of Patricia Trampe ("Trampe Decl."), ¶ 3.)

8    12.   A corporation is a citizen of any state where it is incorporated and of the

9 state where it has its principal place of business. 28 U.S.C. section 1332(c).

10    13.   Defendant, both at the time this action was commenced and the time it was

11 removed to federal court, is a citizen of the states of Delaware and Texas within the

12 meaning of section 1332(c)(1), because it was at all times a corporation formed under the

13 laws of the state of Delaware and its principal place of business and corporate

14 headquarters are located in Texas where Defendant conducts a predominance of its

15 corporate and business activities. *The Hertz Corporation v. Friend* (2010) 130 S.Ct.

16 1181, 1192. (Declaration of William L. Bedman ("Bedman Decl."), ¶¶ 3 and 4.)

17    14.   Applying the "nerve center" test, Texas is the state where Defendant's

18 primary executive, administrative, financial, and management functions are conducted,

19 and where its high level officers direct, control, and coordinate their activities – *i.e.*, the

20 principal place of business of Defendant. (Bedman Decl., ¶¶ 3 and 4.)

21    15.   The presence of Doe defendants has no bearing on the diversity with respect

22 to removal. *See* 28 U.S.C. section 1441(a) ("For purposes of removal under this Chapter,

23 the citizenship of defendants used under a fictitious name shall be disregarded.")

## AMOUNT IN CONTROVERSY

25    16.   The CAFA, 28 U.S.C. Section 1332(d), authorizes the removal of class

26 action cases in which, among other factors mentioned above, the amount in controversy

27 for all class members exceeds $5,000,000. *See, e.g., Sanchez v. Monumental Life Ins. Co.*

28 (9th Cir. 1996) 102 F.3d 398, 403-04 (holding that "in cases where a plaintiff's state court

complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence" (*i.e.*, "that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional threshold).[1]

17.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume the plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter* (C.D. Cal. 2002) 199 F.Supp.2d 993, 1001, *citing, Burns v. Windsor Ins. Co.* (11th Cir. 1994) 31 F.3d 1092, 1096 (the amount in controversy analysis presumes that "plaintiff prevails on liability"); and *Angus v. Shiley Inc.* (3d Cir. 1993) 989 F.2d 142, 146 ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated").   The argument and facts set forth herein appropriately may be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.* (9th Cir. 2002) 281 F.3d 837, 843, n. 1.

18.     Here, without admitting that Plaintiff could recover any damages or penalties, Defendant, in fact, can state that it is more probable than not that the amount in controversy for all class members exceeds $5,000,000, exclusive of interest, and costs.[2] (*See* **Exhibit "A,"** Complaint at ¶¶ 45-47, 50, 61, 70, 76, 82, 87, 94-96, and Prayer for Relief.)

a.     Based on Plaintiff's proposed putative class, defined as all "current and former California-based (currently residing in California with the intent to reside in California indefinitely) hourly paid or non-exempt oil-rig/oil-filed on-site employees who worked for any of the Defendants within the State of California at any time during the

---

[1]     Although Plaintiff improperly attempts to circumvent removal by pleading less than $5,000,000 in controversy (*see* **Exhibit "A,"** Complaint at ¶¶ 1 and Prayer for Relief at 18:19-21 and ¶ 36), removal nevertheless is proper. *See Std. Fire Ins. Co. v. Knowles* (2013) 133 S. Ct. 1345, 1350-51 (holding plaintiff could not circumvent removal under the CAFA by limiting damages to less than $5,000,000 because he could not bind absent class members).

[2]     Defendant denies the validity and merit of all of Plaintiff's claims, including the amount claimed, the legal theories upon which they purportedly are based, and the claims for monetary and other relief that flow from them, but properly uses Plaintiff's alleged theories of recovery to demonstrate that it is more probable than not the amount in controversy exceeds $5,000,000.

period of four years preceding the filing of this Complaint to final judgment" (*See* **Exhibit "A,"** Complaint at ¶ 28), there are more than 1,000 putative class members, including 557 of whom had their employment with Defendant terminated (voluntarily or involuntarily) between June 27, 2009 and the present (the "Limitations Period"). (Trampe Decl., ¶ 4.)   At all times during the Limitations Period, Defendant has on average employed at least 400 individuals who would fall within the scope of Plaintiff's proposed putative class and the average hourly rate of pay for all such individuals was at least $9.84.  (*Id.*)   All such individuals were or are employed on a full-time basis, working five (5) days per week and at least eight (8) hour per day. (*Id.*)  Throughout the Limitations Period, Defendant has had a payroll cycle by which it pays its employees, including all members of the alleged putative class, every two (2) weeks.  (Trampe Decl., ¶ 5.)

   b.   Among other monetary relief, Plaintiff seeks to recover unpaid wages on the theory that Defendant failed to compensate each of the putative class members for all hours worked in excess of eight (8) in a day or forty (40) in a work week in violation of Labor Code sections 510, 1194 and 1198 and the applicable Wage Orders (*See* **Exhibit "A,"** Complaint at ¶¶ 17, 21, 22 and 33-41.)  While Plaintiff's Complaint provides no indication as to the number of hours Plaintiff claims he and the other putative class members worked and for which they were not paid during the Limitations Period, if each putative class member worked only one (1) hour of overtime per week for which that individual was not paid, the amount in controversy on this one aspect of Plaintiff's claim would be at least **$1,180,800** (1 hour/week × $9.84/hour × 1.5 (overtime premium) × 400 putative class members × 200 weeks during the Limitations Period) and that number would have to be multiplied by the total number of overtime hours worked per week and for which the putative class members claim they were not compensated as required by California law to determine the actual amount in controversy. (Trampe Decl., ¶ 4.)  As a result, the amount in controversy on this one aspect of Plaintiff claims could range anywhere from a low of **$1,180,800** to **$5,904,000** ($1,180,600 × five (5) hours per week)

1  or more if Plaintiff contends he and the other putative class members worked more than

2  five (5) hours of overtime per week for which they were not compensated.

3          c.      Plaintiff also seeks premiums equal to one (1) hour of wages pursuant

4  to Labor Code sections 226.7 and 512 and the applicable Wage Order for each day of

5  work during the Limitations Period on which Defendant failed to provide each of the

6  putative class members the required meal periods.  (*See* **Exhibit "A,"** Complaint at ¶¶

7  52-61.)  While Plaintiff's Complaint provides no indication as to the number of meal

8  periods Plaintiff claims he and the other putative class members were not provided per

9  week during the Limitations Period, he alleges Defendant "routinely interrupted and/or

10 failed to permit, authorize and/or provide Plaintiff's and class members' meal breaks."

11 (*See* **Exhibit "A,"** Complaint at ¶ 56.)  As Plaintiff's claims could range anywhere from

12 one (1) to five (5) meal period violations per week, the amount in controversy on this

13 aspect of Plaintiff's claim could range from **$787,200** (one (1) violation per week ×

14 9.84/hour × 400 putative class members × 200 workweeks during the Limitations Period)

15 to **$3,936,000** (five (5) violations per week × 9.84/hour × 400 putative class members ×

16 200 workweeks during the Limitations Period).  (Trampe Decl., ¶ 4.)

17         d.      Plaintiff also seeks premium pay equal to one (1) hour of wages

18 pursuant to Labor Code sections 226.7 and the applicable Wage Order for each day of

19 work during the Limitations Period on which Defendant failed to provide each of the

20 putative class members the required rest periods.  (*See* **Exhibit "A,"** Complaint at ¶¶ 63-

21 70.)  Again, while Plaintiff's Complaint provides no indication as to the number of rest

22 periods Plaintiff claims he and the other putative class members were not provided per

23 week during the Limitations Period, Plaintiff's claims could range anywhere from one (1)

24 rest period violation per week to five (5) rest period violations per week.  As the

25 calculation of premiums for rest period violations is the same as the calculation for meal

26 period violations, the amount in controversy on this aspect of Plaintiff's claim also could

27 range anywhere from **$787,200** (one (1) violation per week × 9.84/hour × 400 putative

28 class members × 200 workweeks during the Limitations Period) to **$3,936,000** (five (5)

1   violations per week × 9.86/hr. × 400 putative class members × 200 workweeks during the

2   Limitations Period).  (Trampe Decl., ¶ 4.)

3           e.     Plaintiff also pleads in his Complaint that he and the other putative

4   class members are entitled to penalties[3] pursuant to Labor Code section 203, and seeks

5   penalties of up to 30 days' wages for Defendant's purported failure to pay all unpaid

6   wages at termination.   (*See* **Exhibit "A,"** Complaint at ¶¶ 72-76.)   Although the

7   Complaint does not specify the dollar amount of penalties being sought, as set forth

8   below, the evidence shows it is more probable than not that the penalties Plaintiff seeks

9   under his Labor Code section 203 claim alone are approximately **$1,315,411** (or 557

10  former employees × $9.84/hour × 8 hours per day × 30 days).  (Trampe Decl., ¶ 4.)

11          f.     Plaintiff also seeks to recover statutory penalties pursuant to Labor

12  Code section 226(a), based on Defendant's alleged failure to provide accurate itemized

13  wage statements to each member of the putative class.  (*See* **Exhibit "A,"** Complaint at

14  ¶¶ 78-82.)  If Plaintiff and the other members of the putative class prevail either on their

15  claim for failure to pay overtime wages for all hours worked or failure to provide

16  required meal periods, they also may be entitled to recover statutory penalties of $50.00

17  for the initial pay period in which a violation of Labor Code section 226(a) occurred and

18  $100.00 per employee for each violation in a subsequent pay period, not to exceed an

19  aggregate penalty of $4,000.00.   As a result, the amount of statutory penalties in

20  controversy on this aspect of Plaintiff's claim is at least **$1,100,000** ($50.00 for the initial

21  violation and $2,700.00 for the remaining 27 violations for the pay periods between June

22  19, 2012 and the present × 400 putative class members).  (Trampe Decl., ¶ 5.)

23          g.     In addition, Plaintiff's Complaint seeks an unspecified amount of

24  damages pursuant to Labor Code section 2802 for Defendant's alleged failure to fully

25

26  [3]   *Brady v. Mercedes-Benz USA, Inc.* (N.D. Cal. 2002) 243 F.Supp.2d 1004, 1009
    (penalties under California's Song-Beverly Consumer Warranty Act may be counted in
27  determining the amount in controversy); *Clark v. Nat'l Travelers Life Ins. Co.* (6th Cir.
    1975) 518 F.2d 1167, 1168 ("It is settled that the statutory penalty and a statutory
28  attorney's fees can be considered in determining whether the jurisdictional amount is
    met.").

1   reimburse Plaintiff and the other putative class members for all necessary expenditures

2   they incurred in direct consequence of the discharge of their job duties (*i.e.*, failure to

3   reimburse necessary business expenses). (*See* **Exhibit "A,"** Complaint at ¶¶ 84-87.)

4           h.      Furthermore, Plaintiff's Complaint seeks an unspecified amount of

5   attorney's fees in connection with his Complaint. (*See* **Exhibit "A,"** Prayer for Relief at

6   ¶¶ 8, 13, 18, 22, 27, 30, and 33.) In determining whether a complaint meets the amount

7   in controversy threshold for a removal under 28 U.S.C. section 1332(a), a court may

8   consider the aggregate value of claims for compensatory damages and attorney's fees.

9   *See, e.g.., Goldberg v. CPC Int'l, Inc.* (9th Cir. 1982) 678 F.2d 1365, 1367, *cert. denied*,

10  459 U.S. 945 (1982) (attorney's fees may be taken into account to determine

11  jurisdictional amount). The amount in controversy may include attorney's fees which are

12  recoverable by statute. *Galt G/S v. JSS Scandinavia* (9th Cir. 1998) 142 F.3d 1150, 1155-

13  56. The Court may examine the nature of the action and the relief sought and take

14  judicial notice of attorney's fees awards in similar cases. *See, e.g., Simmons v. PCR*

15  *Technology* (N.D. Cal. 2002) 209 F.Supp.2d 1029, 1035 (noting that attorneys' fees in

16  individual employment discrimination cases often exceed damages). Such fees are

17  calculable beyond the time of removal. *Id.* at 1035. For purposes of this analysis only,

18  the amount of attorney's fees at issue in this matter could amount to 10% of the damages

19  set forth above.

20          19.     Presuming, as it must for purposes of determining jurisdiction under the

21  CAFA, that Plaintiff will prevail on each and every one of his claims asserted in the

22  Complaint, the data set forth in Paragraphs 17(a) – (h), above, clearly establishes it is

23  more probable than not that the amount in controversy in this action exceeds $5,000,000.

24  Based on Defendant's calculations, the amount in controversy may range anywhere from

25  **$5,170,611** to **$16,191,411**, or more, depending on the number of overtime hours Plaintiff

26  claims he and the other putative class members worked and for which they were not paid

27  and the number of alleged meal and rest period violations during the Limitations Period.

28  Therefore, the aggregate claimed damages by Plaintiff on behalf of himself and all

members of the putative class, excluding, interest and costs, exceed the jurisdictional amount in controversy.

## NUMEROSITY

20.   The CAFA also provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. section 1332(d)(5).

21.   Here, the putative class Plaintiff seeks to represent exceeds 100 members. (*See* Trampe Decl., ¶ 4; *see* **Exhibit "A,"** Complaint at ¶ 30(a).)  As such, this Court properly has jurisdiction over this matter, as the class proposed by Plaintiff contains in excess of 100 members.

22.   Venue lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. sections 1441(a) and 1391(c) because the state action was filed in this district and Defendant is subject to personal jurisdiction in the Eastern District of California.

WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Kern to this Court.

Respectfully submitted,

Dated:   August 5, 2013       JACKSON LEWIS LLP


By: _____
   David G. Hoiles, Jr.
   Lindsay L. Ryan

   Attorneys for Defendant
   HALLIBURTON ENERGY
   SERVICES, INC.

4835-5862-6837, v. 1